UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

DONNA M. LEMAN,

                              Plaintiff,

              -vs-                                                    14-CV-901-JTC

CAROLYN W. COLVIN,
Acting Commissioner of Social Security,

                              Defendant.

_____

APPEARANCES:   LAW OFFICES OF KENNETH HILLER (Timothy Hiller, Esq., of
               Counsel), Amherst, New York, for Plaintiff.

               WILLIAM J. HOCHUL, JR., United States Attorney (Daniel R. Janes,
               Special Assistant United States Attorney, of Counsel), Buffalo, New
               York, for Defendant.

        This matter has been transferred to the undersigned for all further proceedings, by

order of United States District Judge William M. Skretny dated October 8, 2015 (Item 15).

        Plaintiff Donna Leman initiated this action on October 24, 2014, pursuant to the

Social Security Act, 42 U.S.C. § 405(g) ("the Act"), for judicial review of the final

determination of the Acting Commissioner of Social Security ("Commissioner") denying

plaintiff's application for Social Security Disability Insurance ("SSDI") benefits under Title

II of the Act.  Both parties have moved for judgment on the pleadings pursuant to Rule

12(c) of the Federal Rules of Civil Procedure (*see* Items 8,13).  For the following reasons,

plaintiff's motion is denied, and the Commissioner's motion is granted.

## BACKGROUND

Plaintiff was born on November 18, 1959 (Tr. 124).[1]   She filed an application for SSDI on June 9, 2011, alleging disability due to arthritis, anxiety, whiplash, hypertension, hypothyroidism, hypercholesterol, migraine headaches, congestive heart failure, and knee replacement, with an onset date of May 5, 2010 (Tr. 124, 137).  This claim was denied administratively on December 22, 2011 (*see* Tr. 78-82).  Plaintiff requested a hearing, which was held on January 8, 2013, before Administrative Law Judge ("ALJ") Donald T. McDougall (Tr. 30-68).  Plaintiff appeared and testified at the hearing, and was represented by counsel.

On February 12, 2013, ALJ McDougall issued a decision finding that plaintiff was not disabled within the meaning of the Act (Tr. 15-24).  Following the five-step sequential evaluation process outlined in the Social Security Administration regulations governing claims under Title II (*see* 20 C.F.R. § 404.1520), the ALJ found that plaintiff had the following "severe" impairments: knee replacement, damaged cervical vertebrae, arthritis of the hands, migraine headaches, cardiac impairments, and depression (Tr. 17). However, the ALJ found that the evidence in the record regarding plaintiff's signs, symptoms and functional limitations did not support a finding that these impairments, considered singly or in combination, met or medically equaled the criteria of any impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  The ALJ specifically considered the criteria for mental impairment Listings 12.04 (Affective Disorders), and 12.06 (Anxiety Related Disorders), but found that plaintiff's mental

---

[1]Parenthetical numeric references preceded by "Tr." are to pages of the administrative transcript filed by the Commissioner at the time of entry of notice of appearance in this action (Item 4).

impairments did not result in restrictions or limitations to the degree necessary to meet or equal any of these Listings (Tr. 18). The ALJ discussed the evidence in the record regarding plaintiff's medically determinable mental impairments–including treatment notes and records from health providers and the reports of consultative examiners, along with plaintiff's hearing testimony and statements about the limiting effects of her impairments–and determined that plaintiff had the residual functional capacity ("RFC") to perform light work with the following non-exertional limitations: plaintiff is limited to work that does not require more than occasional flexing of the head downward, no rotation of the head and neck more than 15 degrees in either direction, no driving, and no more than frequent use of the arms (Tr. 18-19). Considering plaintiff's age (50 years at the time of the onset of disability), high school education, work experience (inability to perform past relevant work), and RFC, and relying on the testimony of a Vocational Expert ("VE"), the ALJ determined that jobs exist in significant numbers in the national economy that plaintiff can perform and that she has not been under a disability from the time of the onset of her disability through the date of the decision (Tr. 23-24).

The ALJ's decision became the final decision of the Commissioner on August 26, 2014, when the Appeals Council denied plaintiff's request for review (Tr. 1-3), and this action followed.

In her motion for judgment on the pleadings, plaintiff contends that the Commissioner's determination should be reversed, or remanded for further consideration, because (1) the ALJ's findings at steps two, three, and four of the sequential evaluation process were inconsistent; and (2) the RFC determination was improper in that it did not include any limitations regarding plaintiff's ability to deal with stress. *See* Item 8-1. The

3

government contends that the Commissioner's determination should be affirmed because the ALJ's decision was made in accordance with the pertinent legal standards and is based on substantial evidence in the record.  *See* Item 13-1.

## DISCUSSION

### I.   Scope of Judicial Review

The Social Security Act provides that, upon district court review of the Commissioner's decision, "[t]he findings of the Commissioner … as to any fact, if supported by substantial evidence, shall be conclusive …."  42 U.S.C. § 405(g). Substantial evidence is defined as evidence which "a reasonable mind might accept as adequate to support a conclusion."  *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938), *quoted in Richardson v. Perales*, 402 U.S. 389, 401 (1971); *see also Tejada v. Apfel*, 167 F.3d 770, 773-74 (2d Cir. 1999).  The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts.  *Giannasca v. Astrue*, 2011 WL 4445141, at *3 (S.D.N.Y. Sept. 26, 2011) (citing *Rodriguez v. Califano*, 431 F. Supp. 421, 423 (S.D.N.Y. 1977)).

Under these standards, the scope of judicial review of the Commissioner's decision is limited, and the reviewing court may not try the case *de novo* or substitute its findings for those of the Commissioner.  *Richardson*, 402 U.S. at 401; *see also Cage v. Comm'r of Soc. Servs.*, 692 F.3d 118, 122 (2d Cir. 2012).  The court's inquiry is "whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached" by the Commissioner.  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982), *quoted in Hart v. Colvin*, 2014 WL 916747, at *2 (W.D.N.Y. Mar. 10, 2014).

However, "[b]efore the insulation of the substantial evidence test comes into play, it must first be determined that the facts of a particular case have been evaluated in the light of correct legal standards." *Klofta v. Mathews*, 418 F. Supp. 1139, 1411 (E.D.Wis. 1976), *quoted in Sharbaugh v. Apfel*, 2000 WL 575632, at *2 (W.D.N.Y. Mar. 20, 2000); *Nunez v. Astrue*, 2013 WL 3753421, at *6 (S.D.N.Y. July 17, 2013) (citing *Tejada*, 167 F.3d at 773). "Failure to apply the correct legal standard constitutes reversible error, including, in certain circumstances, failure to adhere to the applicable regulations." *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (citations omitted). Thus, the Commissioner's determination cannot be upheld when it is based on an erroneous view of the law, or misapplication of the regulations, that disregards highly probative evidence. *See Grey v. Heckler*, 721 F.2d 41, 44 (2d Cir. 1983); *see also Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987) ("Failure to apply the correct legal standards is grounds for reversal."), *quoted in McKinzie v. Astrue*, 2010 WL 276740, at *6 (W.D.N.Y. Jan. 20, 2010).

If the Commissioner's findings are free of legal error and supported by substantial evidence, the court must uphold the decision. 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive, and where a claim has been denied … the court shall review only the question of conformity with [the] regulations …."); *see Kohler*, 546 F.3d at 265. "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [the court] will not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Even where there is substantial evidence in the record weighing against the Commissioner's findings, the determination will

not be disturbed so long as substantial evidence also supports it.  *See Marquez v. Colvin*, 2013 WL 5568718, at *7 (S.D.N.Y. Oct. 9, 2013) (citing *DeChirico v. Callahan*, 134 F.3d 1177, 1182 (2d Cir. 1998) (upholding the Commissioner's decision where there was substantial evidence for both sides)).

In addition, it is the function of the Commissioner, not the reviewing court, "to resolve evidentiary conflicts and to appraise the credibility of witnesses, including claimant." *Carroll v. Sec'y of Health and Human Services*, 705 F.2d 638, 642 (2d Cir. 1983); *cf. Cichocki v. Astrue*, 534 F. App'x 71, 75 (2d Cir. Sept. 5, 2013).  "Genuine conflicts in the medical evidence are for the Commissioner to resolve," *Veino*, 312 F.3d at 588, and the court "must show special deference" to credibility determinations made by the ALJ, "who had the opportunity to observe the witnesses' demeanor" while testifying.  *Yellow Freight Sys. Inc. v. Reich*, 38 F.3d 76, 81 (2d Cir. 1994).

## II.      Standards for Determining Eligibility for Disability Benefits

To be eligible for SSI benefits under the Social Security Act, plaintiff must present proof sufficient to show that she suffers from a medically determinable physical or mental impairment "which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months …," 42 U.S.C. § 423(d)(1)(A), and is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy …."  42 U.S.C. § 423(d)(2)(A); *see also* 20 C.F.R. § 404.1505(a).  As indicated above, the regulations set forth a five-step process to be followed when a disability claim comes before an ALJ for

evaluation of the claimant's eligibility for benefits.  *See* 20 C.F.R. § 404.1520.  First, the ALJ must determine whether the claimant is presently engaged in substantial gainful activity.  If the claimant is not, the ALJ must decide if the claimant has a "severe" impairment, which is a medically determinable physical or mental impairment, or combination of impairments, that has lasted (or may be expected to last) for a continuous period of at least 12 months which "significantly limits [the claimant's] physical or mental ability to do basic work activities ...."  20 C.F.R. § 404.1520(c); *see also* § 404.1509 (duration requirement).  If the ALJ finds that the claimant's impairment or combination of impairments is not severe, or is not of qualifying duration, the sequential evaluation ends at step two, and the claim is denied.  *See* 20 C.F.R. § 404.1520(a)(4)(ii).

If the severity and duration requirements are met, the ALJ then determines at the third step whether the claimant's impairment meets or equals the criteria of an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings").  If the impairment meets or equals a listed impairment, the claimant will be found to be disabled.  If the claimant does not have a listed impairment, the fourth step requires the ALJ to determine if, notwithstanding the impairment, the claimant has the residual functional capacity to perform his or her past relevant work.  If the claimant has the RFC to perform his or her past relevant work, the claimant will be found to be not disabled, and the sequential evaluation process comes to an end.  Finally, if the claimant is not capable of performing the past relevant work, the fifth step requires that the ALJ determine whether the claimant is capable of performing any work which exists in the national economy, considering the claimant's age, education, past work experience, and RFC.  *See Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000); *Lynch v. Astrue*, 2008 WL 3413899, at *2 (W.D.N.Y. Aug. 8,

2008).

The claimant bears the burden of proof with respect to the first four steps of the analysis.  If the claimant meets this burden, a limited evidentiary burden shifts to the Commissioner to show that there exists work in the national economy that the claimant can perform. *Poupore v. Astrue*, 566 F.3d 303, 306 (2d Cir. 2009); 20 C.F.R. § 404.1560(c)(2).

### III.    The ALJ's Disability Determination

As previously indicated, in this case the ALJ determined at step one that plaintiff had not engaged in substantial gainful activity since May 5, 2010, the alleged onset date (Tr. 17).  Thereafter, at step two, the ALJ determined that plaintiff suffered from the following "severe" impairments: knee replacement, damaged cervical vertebrae, arthritis in the hands, migraine headaches, cardiac impairments, and depression (Tr. 17).  At step three, the ALJ found that none of plaintiff's severe impairments, singly or in combination, met or medically equaled the criteria of an impairment in the Listings (Tr. 17).  The ALJ then reviewed the medical evidence and hearing testimony and  determined that plaintiff has the RFC to perform light work with certain postural limitations  relating to the movement of her head and neck and use of her arms (Tr. 18-19).  The ALJ did not specify any limitations with regard to plaintiff's mental functioning.  At step four, the ALJ determined that plaintiff was unable to perform any past relevant work (Tr. 22).  Finally, at step five, considering plaintiff's age, education, work experience, and RFC, and relying on the  testimony of a VE, the ALJ determined that plaintiff is capable of making a successful adjustment to other work that exists in significant numbers in the national economy (Tr. 24).  Accordingly, the ALJ found that plaintiff was not disabled from the date of the alleged onset through the

8

date of the decision (Tr. 24).

## IV.   Plaintiff's Motion

### A.   Inconsistency

Plaintiff argues that the Commissioner's determination should be reversed or remanded for further consideration because the ALJ's findings at steps two, three, and four of the sequential evaluation process were internally inconsistent and cannot be reconciled.[2] First, plaintiff contends that the ALJ erred in finding, at step two, that plaintiff's depression was severe while at the same time, applying the "special technique" for mental impairments at step three, finding that she suffered only mild limitations (Tr. 17-18).   Plaintiff has conflated the step two and three findings and has misapprehended the purpose of the so-called "special technique."

The Second Circuit has held that the ALJ's function at the second step of the sequential evaluation is limited to "screen[ing] out *de minimis* claims," *Dixon v. Shalala*, 54 F.3d 1019, 1030 (2d Cir. 1995) (citing *Bowen v. Yuckert*, 482 U.S. 137, 158 (1987).   In this case, the ALJ found at step two that plaintiff's depression was severe as that term is used in the Regulations.   To be severe, an impairment must "significantly limit [the claimant's] physical or mental ability to do basic work activities," 20 C.F.R § 404.1521(a), which are "the abilities and aptitudes necessary to do most jobs," listed in the regulations as:

---

[2] Plaintiff considers the RFC determination to be the step four analysis. For organizational purposes, the court will discuss the RFC determination separately.

(1)  Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

(2)  Capacities for seeing, hearing, and speaking;

(3)  Understanding, carrying out, and remembering simple instructions;

(4)  Use of judgment;

(5)  Responding appropriately to supervision, co-workers and usual work situations; and

(6)  Dealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b).

Having found that plaintiff's depression is severe and not *de minimis* at step two, the ALJ next considered at step three whether her mental impairments met or medically equaled an impairment in the Listings, specifically referring to Listings 12.04 (Affective Disorders) and 12.06 (Anxiety Related Disorders).[3]   Using the so-called "special technique," the ALJ determined that plaintiff did not satisfy the "B" criteria in that she suffered only mild restrictions in her activities of daily living, social functioning, and maintaining concentration, persistence or pace, and had experienced no episodes of decompensation.  *See* Listings 12.04(B)(1-4); 12.06(B) (1-4).  Additionally, the ALJ found that plaintiff did not satisfy the "C" criteria.  *See* Listing 12.04(C)(1-3); 12.06(C).  The Listings require a consideration of different criteria than the step two severity determination. Accordingly, despite a step two finding of severity, the ALJ properly and consistently found at step three that plaintiff's impairments did not meet the criteria of the Listings.

---

[3]  When a case proceeds past step two, the determination of whether an impairment is severe or non-severe becomes irrelevant, as the ALJ must consider the combined impact of all impairments, severe and non-severe.  *See* 20 C.F.R. § 404.1523.

Additionally, the ALJ properly noted that the consideration of the limitations specified in the "B" criteria is not an RFC assessment and that the RFC determination at steps four and five of the sequential evaluation process requires a more detailed assessment of the various functions (Tr. 18).   Consequently, the ALJ properly progressed to determine plaintiff's RFC and to consider the next step in the sequential evaluation process.   The court finds no error in the step two and three determinations and plaintiff is not entitled to reversal or remand on this ground.

### B.     RFC

Plaintiff further argues that the ALJ's RFC determination was improper in that he failed to consider her mental impairment or to include any limitation regarding plaintiff's ability to deal with stress.   Having reviewed the ALJ's decision and the relevant medical records, the court finds that the ALJ properly considered plaintiff's mental impairment and that the RFC is supported by substantial evidence.   The ALJ reviewed plaintiff's medical records and discussed the 2011 report of consultative psychiatric examiner Dr. Renee Baskin, to which he afforded "great weight" (Tr. 21).   Dr. Baskin found that plaintiff's depression and anxiety-related symptoms were "secondary to coping with chronic pain, coping with multiple medical problems, loss of livelihood . . ., significant limitations, financial stress and loss of independence." (Tr. 777).   Despite her diagnosis of adjustment disorder with mixed anxiety and depressed mood, Dr. Baskin found plaintiff's thought processes coherent, her affect was appropriate, her mood was euthymic, attention, concentration, and memory skills were intact, insight and judgment were good, and plaintiff's intellectual functioning was average (Tr. 778).   Dr. Baskin concluded that plaintiff would have minimal

to no limitations in her ability to follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others (Tr. 779). Dr. Baskin found moderate limitations in plaintiff's ability to deal with stress. *Id.* She recommended continued psychiatric consultations and determined that plaintiff's prognosis was fair to good. *Id.*

Additionally, the ALJ considered the Psychiatric Review Technique ("PRT") completed by a state review evaluator J. Echevarria on December 1, 2011 (Tr. 786-99). Dr. Echevarria found that plaintiff suffered from no severe mental impairments (Tr. 786) and was capable of performing simple, low stress work (Tr. 798).

At the hearing, plaintiff testified that she was "doing much better" on Pristiq, an anti-depressant used to treat major depressive disorder (Tr. 41). She takes Xanax, an anti-anxiety drug, only as needed and "haven't really had to use" it. *Id.* Plaintiff testified that she feels "calmer and able to handle things. It's mostly at home, personal things that get me anxious . . ." *Id.* When asked how her psychiatric problems affected her, plaintiff stated that she "had problems" with her children as they were growing up and that she was a "very nervous mother" (Tr. 40). Plaintiff did not specify any psychiatric problems that could remotely be considered limitations on her ability to work.

Plaintiff argues that the ALJ improperly disregarded the conclusion of Dr. Baskin in failing to incorporate some limitation for dealing with stress in plaintiff's RFC. With regard to plaintiff's ability to deal with stress, the ALJ noted that plaintiff reported to her health care providers, in 2011and 2012, a satisfaction with her medication regimen, infrequent use of Xanax, the stabilization of her moods, and a significant improvement in her ability to cope

with the stressors in her life (Tr. 650, 658, 881-82, 975).  As stated above, plaintiff testified to only rare use of anti-anxiety medication and did not specify any stress-related limitations on her ability to perform work-related activities.  The RFC reflects the finding of Dr. Baskin that plaintiff could function in the work environment despite moderate limitations in her ability to deal with stress.  Plaintiff was found to be able to follow and understand simple instructions, perform simple tasks independently, maintain attention and concentration, maintain a regular schedule, learn new tasks, perform complex tasks independently, make appropriate decisions, and relate adequately with others (Tr. 779).  Accordingly, the court finds that the RFC is supported by substantial evidence and plaintiff is not entitled to reversal or remand on this ground.

## CONCLUSION

For the foregoing reasons, the court finds that the ALJ's decision is based on correct legal standards and supported by substantial evidence, and the Commissioner's determination must therefore be upheld.  Therefore, plaintiff's motion for judgment on the pleadings (Item 8) is denied, the Commissioner's motion for judgment on the pleadings (Item 13) is granted, and the case is dismissed.

The Clerk of the Court is directed to enter judgment in favor of the Commissioner, and to close the case.

So ordered.

_____\s\ John T. Curtin_____
JOHN T. CURTIN
United States District Judge

Dated:    February 26, 2016

13